**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4099

EDWARD E. MURPHY,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Parkersburg.
Charles H. Haden II, Chief District Judge.
(CR-95-122)

Submitted: August 6, 1996

Decided: August 21, 1996

Before MURNAGHAN, HAMILTON, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Hunt L. Charach, Federal Public Defender, C. Cooper Fulton, Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Rebecca A. Betts, United States Attorney, Miller A. Bushong, III, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Edward E. Murphy pled guilty to possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (1988) but preserved the right to challenge the denial of his motion to suppress on appeal. We affirm.

During an investigatory detention pursuant to Terry v. Ohio, 392 U.S. 1 (1968), and just prior to entering a police cruiser in order to accompany the police to the station for questioning, a police officer observed Murphy, who was not under arrest at the time, abandon a package that subsequently proved to contain twenty-one individually packaged hits of heroin. Murphy contends: (1) that he was in fact arrested, not just detained, prior to his abandonment of the heroin, as he was not questioned where he was found and was not told he was "free to go"; (2) the police had no probable cause to justify his arrest, and he did not consent to accompanying the police to the police station for questioning; (3) the seizure of the heroin was the direct result of Murphy's illegal arrest; (4) and no intervening event purged the taint of the illegal arrest, making the packet of heroin inadmissible. For the reasons that follow, we find his arguments unpersuasive.

The investigatory detention occurred after police arrested a woman for filling a forged prescription at a Wal-Mart store. When the police asked the woman to take them to the people that were with her, the woman led police to a van in which two individuals (including Murphy) were seated. Murphy exited the van and was subjected to a pat down. The officer doing the pat down first noted what he described as a package of gum in Murphy's front pants pocket, which the officer left undisturbed. The officer then felt what he believed to be pills in Murphy's back pocket. The officer reached in and removed what appeared to be prescription drugs. No charges relating to the pills were brought against Murphy.

2

A short time later, the police officers decided to have the three people accompany them to the police station for additional questioning related to the forged prescription. As Murphy and an officer approached the police cruiser that would transport Murphy to the station, the officer observed Murphy drop a packet onto the ground that was about the size of the package of gum which the officer had felt earlier in Murphy's front pocket. Not knowing what the packet contained, the officer picked it up and inspected it. The package contained twenty-one individually packaged hits of heroin. Murphy was advised of his Miranda* rights, transported to the police station, and ultimately charged with possession with intent to distribute heroin.

Murphy's first argument that he was arrested in the parking lot fails because the officers did not exceed the scope of their Terry stop. A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable, articulable suspicion that criminal activity is afoot. Terry, 392 U.S. at 30. The presence or absence of a reasonable suspicion is determined based on the totality of the circumstances confronting the police officer at the time the officer decides to stop the suspect, including consideration of all information available to the officer and any reasonable inferences that can be drawn. United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989). An appellate court reviews the district court's findings of fact about the stop for clear error and must give "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, ___ U.S. ___, 64 U.S.L.W. 4373, 4376 (U.S. May 28, 1996) (No. 95-5257) (indicating that trial judges view "the facts of a particular case in light of the distinctive features and events of the community; likewise a police officer views the facts through the lens of his police experience and expertise.").

Although a person is seized for Fourth Amendment purposes when, under the same circumstances, a reasonable person would have believed he was not free to leave, the person's perception of their freedom is "`insufficient to convert a Terry stop into an arrest.'" United States v. Leshuk, 65 F.3d 1105, 1109 (4th Cir. 1995) (quoting United States v. Moore, 817 F.2d 1105, 1108 (4th Cir.), cert. denied, 484 U.S. 965 (1987)). Terry stops typically involve "`detentions

_____

*Miranda v. Arizona, 384 U.S. 436 (1966).

3

where the person detained is not technically free to leave while the officer pursues the investigation.'" Id. (quoting United States v. Manbeck, 744 F.2d 360, 376-77 (4th Cir. 1984), cert. denied, 469 U.S. 1217 (1985). Nevertheless, a custodial interrogation moves beyond an acceptable Terry stop when the stop lasts "longer than necessary to verify or dispel the officer's suspicion." Id.

In Murphy's case, the police had a reasonable suspicion that criminal activity was afoot based on the call to the Wal-Mart for a woman forging prescriptions and being led by that woman to the van in which Murphy was found. Based on their reasonable suspicion, the police stopped Murphy, asked him for identification, questioned him briefly, and subjected him to a pat down. None of these actions exceeded the scope of Terry. In addition, Murphy did not show that the detention took an inordinate amount of time or that the officer's continued to detain him even after they had completed their investigation. Thus, Murphy failed to prove that his detention went beyond a reasonable Terry stop and became an unlawful seizure.

Murphy's assertion that there was no probable cause to arrest him is meritless because we find that he was not arrested, but rather lawfully detained pursuant to Terry. Included in his probable cause argument, Murphy asserts that the officers illegally seized the pills from his back pocket. This argument fails. When a police officer "lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy. . . ." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993).

We disagree with Murphy's argument that he did not consent to being taken to the station for interrogation. One police officer testified that Murphy consented to going to the police station. In addition, no officer handcuffed, physically restrained, or threatened Murphy in any way; no officer told him he was under arrest; no officer displayed a weapon or used strong language or tone to indicate compliance was compelled. Thus, because Murphy provided no evidence that the officer's compelled him to go to the station, his argument fails.

As with Murphy's probable cause argument, his argument that he would not have dropped the packet of heroin but for the fact that he

4

was being taken into custody illegally, also fails. When Murphy abandoned the heroin, he was not in custody and even if he had been, he voluntarily dropped the package of heroin in plain view. The officer failed to discover the heroin in his initial pat down, so there was no reason for Murphy to disclose what was in his pocket. Even when the officer examined the contents of the package, there was no violation of Murphy's rights because he gave up his expectation of privacy by abandoning the property in plain view. See California v. Hodari D., 499 U.S. 621, 629 (1991) (holding cocaine abandoned while defendant was running away from police was not the fruit of an illegal seizure); Abel v. United States, 362 U.S. 217, 241 (1960) (holding warrantless seizure of items left in wastebasket in vacated hotel room was admissible because the Court found the property had been abandoned).

Finally, Murphy argues that there was a close causal connection between his illegal arrest and seizure of the heroin, thereby making the heroin inadmissible. Again, because there was no illegal arrest, this argument fails.

Finding no violation of Murphy's Fourth Amendment rights, we affirm the ruling of the district court denying the motion to suppress the evidence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5